UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **LATRICE AUSTIN**, *on behalf of herself and all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>**BETTER DEBT SOLUTIONS, LLC,**<br><br>*Defendant*. | Civil Case No.:<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of the illegal marketing practices of Defendant, Better Debt Solutions, LLC ("BDS" or "Defendant") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2. BDS makes, or has made on its behalf, telemarketing calls soliciting its real estate services.

3. These calls are made to cell phones using an artificial or prerecorded voice, without the prior express consent of consumers.

4. The TCPA prohibits making calls to cellular telephone numbers using an artificial or prerecorded voice without the prior express consent.

5. Accordingly, Ms. Austin brings this action on behalf of herself and a class of similarly situated individuals.

1

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

7. This Court has jurisdiction over BDS because BDS conducts business transactions in this District and made calls into this District targeting residents of this District as part of the business it conducts in this District.

8. Specifically, BDS targeted a resident of this District who's cellular telephone number has an area code (i.e., 678) that is associated with this District – confirming that Defendant *knew* it was calling into this District.

9. Venue is proper in this District because Defendant targeted a resident of this District and called into this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

10. Plaintiff Latrice Austin ("Ms. Austin") is, and at all times mentioned herein was, a citizen and resident of Covington, Georgia.

11. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

12. Defendant is, and at all times mentioned herein was a limited liability company organized and existing under the laws of the state of California with a principal office address located at 2525 Main Street Suite 500, Irvine, CA 92614.

2

13. Defendant may be served via its registered agent, Nima Asadi, Esq., located at 19200 Von Karman Ave, Suite 600, Irvine, CA 92612.

14. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

16. Relevant here, section 227(b)(1)(A)(iii) of the TCPA sets forth restrictions on the use of automated telephone equipment and prerecorded voice calls, and provides in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A)  to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> \*\*\*\*\*

(iii)   to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

17.   A violation of 47 U.S.C. § 227(b)(1)(A)(iii) carries statutory damages of $500 to $1,500 per call. *See* 47 U.S.C. § 227(b)(3).

## **FACTUAL ALLEGATIONS**

18.   Ms. Austin is the user of his personal cellular telephone number (678)-XXX-3525.

19.   On December 10, 2024, Ms. Austin received a prerecorded call from Defendant.

20.   The call came from telephone number (929) 748-4315.

21.   The call left the following prerecorded voicemail message on Ms. Austin's voicemail:

> Hey there! This is Jessica again from your loan processing team. I've been trying to reach out to you regarding your loan application, but we haven't been able to connect yet. We just need to verify a few final details. Mostly really its your income and a few other minor items just to complete your approval. Could you please return my call at (877) 867-5139. It would be ideal if we could finalize this before 5pm pacific time today. However, if you changed your mind, would like to cancel your application or no longer wish to proceed, please feel free to let us know as well when you give us a call back. Make sure to mention your application ID just for a faster process. Your application ID is A as in Apple, H as in Hotel, Z as in Zebra 34578. Once again that number is A as in Apple, H as in Hotel, Z

as in Zebra 34578. And also just a reminder, my number is (877) 867-5139. I'm looking forward to hearing from you soon. Thank you so much and have a wonderful day.

22. On December 12, 2024, Ms. Austin received a prerecorded call from Defendant.

23. The call came from telephone number (645) 213-0416.

24. The call left the same prerecorded voicemail message on Ms. Austin's voicemail, as transcribed above.

25. On December 12, 2024, Ms. Austin received another call from Defendant.

26. The call came from a "private number" that did not display on her telephone.

27. Ms. Austin answered the call and a brief prerecorded message played before the call was connected to a live representative.

28. Ms. Austin asked the live representative if she could speak to a supervisor and instructed the representative that she did not want further calls.

29. On December 17, 2024, Ms. Austin received another call from Defendant.

30. The call came from telephone number (708) 760-4739.

31. In an attempt to determine the true identity of the caller, Ms. Austin engaged with the caller and asked that the caller send her an email with some

company information while she was on the phone.

32. Ms. Austin then received an email from "Alan Angeles" with the email address of "aangeles@betterdebtsolutions.com".

33. The email provided reviews of Defendant from Better Business Bureau, TrustPilot, and Google.

34. The email also provided Mr. Angeles direct telephone number, (949) 767-5581.

35. Before Ms. Austin concluded the call, Ms. Austin explained to Mr. Angeles that she requested the email to identify the actual company calling her. She further explained that she previously made do-not-call requests and that they were not honored. She again requested no further calls.

36. On December 18, 2024, Ms. Austin received another prerecorded call from Defendant.

37. The call came from telephone number (929) 748-4315.

38. The call left the same prerecorded voicemail message on Ms. Austin's voicemail, as transcribed above.

39. On December 19, 2024, Ms. Austin received another prerecorded call from Defendant.

40. The call came from telephone number (929) 747-5003.

41. The call left the same prerecorded message on her voicemail message

on Ms. Austin's voicemail, as transcribed above.

42. On December 23, 2024, Ms. Austin received another prerecorded call from Defendant.

43. The call came from telephone number (464) 237-3212.

44. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

45. On December 30, 2024, Ms. Austin received another prerecorded call from Defendant.

46. The call came from telephone number (708) 464-5851.

47. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

48. On January 2, 2025, Ms. Austin received another prerecorded call from Defendant.

49. The call came from telephone number (464) 235-3673.

50. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

51. On January 3, 2025, Ms. Austin received another prerecorded call from Defendant.

52. The call came from telephone number (708) 464-5851.

53. The call left the same prerecorded message on her voicemail message

on Ms. Austin's voicemail, as transcribed above.

54. On January 9, 2025, Ms. Austin received another prerecorded call from Defendant.

55. The call came from telephone number (464) 235-3673.

56. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

57. On January 10, 2025, Ms. Austin received another prerecorded call from Defendant.

58. The call came from telephone number (708) 464-5851.

59. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above

60. On January 15, 2025, Ms. Austin received another prerecorded call from Defendant.

61. The call came from telephone number (364) 224-4212.

62. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

63. On January 20, 2025, Ms. Austin received another prerecorded call from Defendant.

64. The call came from telephone number (405) 289-5392.

65. The call left the same prerecorded message on her voicemail message

on Ms. Austin's voicemail, as transcribed above.

66. On January 24, 2025, Ms. Austin received another prerecorded call from Defendant.

67. The call came from telephone number (662) 850-4895.

68. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

69. Upon information and belief, Defendant blasts out thousands of prerecorded telemarketing messages in an effort to generate return calls from consumers that may be looking for loans.

70. Upon information and belief, Defendant obtains lists of telephone numbers of consumers that did not consent to be called.

71. Ms. Austin did not provide prior express invitation or permission or consent for the telephone calls she received.

72. Defendant's violations were, at a minimum, negligent.

73. Alternatively, Defendant's violations were willful and knowing.

74. Ms. Austin and the class were damaged by the violations alleged herein. In addition to using their cellular data, storage, and battery life, they suffered an invasion of privacy, aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls. Their privacy was improperly invaded, the

Defendant's calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted telephone calls. Defendant's telephone calls were annoying and a nuisance and wasted the time of Ms. Austin and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANT'S LIABILITY**

75. Upon information and belief, Defendant used automated systems to make outbound telephonic sales calls that utilized an artificial or prerecorded voice to hundreds if not thousands of consumers' cellular telephones across the U.S.

76. Accordingly, for violations of 47 U.S.C. § 227(b), Ms. Austin is entitled to $500 per call. *See* 47 U.S.C. § 227(b)(3).

77. Ms. Austin is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

78. Defendant, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

79. To the extent Defendant outsourced its illegal robocalling, it is still liable for calls that violate the TCPA.

80. To the extent Defendant outsourced its illegal robocalling, Defendant is liable for third-parties' actions because it took steps to cause the calls to be made, and because the calls were made pursuant to Defendant's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

81. On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

82. *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

83. Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

## **CLASS ACTION ALLEGATIONS**

84. Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of the proposed "Class," as defined as follows:

> Plaintiff and all persons and entities throughout the United States to whom Defendant placed a call, or had a call placed on its behalf, directed to a number assigned to a cellular telephone service, with an artificial or prerecorded voice, from four years prior to the date of this class action complaint through the date of class certification.

85. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

86. The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

87. The Defendant's records will reveal the precise number of class members.

88. The exact number and identities of the people who fit within the Class are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

   a. The time period(s) during which Defendant or its agent(s) made the telephone calls;

   b. The telephone numbers to which Defendant or its agent(s) made telephone calls;

   c. The telephone numbers for which Defendant had prior express written consent;

   d. The purposes of such telephone calls; and

   e. The names and addresses of Class members.

89. Upon information and belief, the Class is comprised of hundreds, if not thousands, of individuals.

90. There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

   a. Whether Defendant (or someone acting on its behalf) makes telemarketing calls;

   b. Whether Defendant uses artificial or prerecorded voices to make its telemarketing calls to cellular telephones;

    c. Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

    d. Whether Defendant had "prior express consent" under the TCPA to call the cell phone numbers of Plaintiff and Class Members;

    e. Whether Defendant's statutory violations were willful and knowing; and

    f. Whether Defendant should be enjoined from engaging in such conduct in the future.

91. Plaintiff is a member of the Class in that Defendant placed a call to his cellular telephone number that utilized artificial or prerecorded voices, without his prior express written consent.

92. Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

93. Plaintiff and all putative Members of the Class have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Class spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

94. Plaintiff has no interests antagonistic to, or in conflict with, the Class.

95. Plaintiff is an adequate representative of the Class and will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent him and the Class. Plaintiff is prepared to participate in discovery and depositions and otherwise fulfill his obligations as a class representative.

96. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

97. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

98. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

99. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
**Violations of the TCPA, 47 U.S.C. 227(b)**
**(On Behalf of Plaintiff and the Prerecorded Call Class)**

100. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed to Ms. Austin's cellular telephone number, for non-emergency purposes and without his consent.

101. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Ms. Austin and the members of the class are entitled to damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the representatives of the Class and appointing his counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages; and

F. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** March 3, 2025

/s/John A. Love_____
John A. Love, Esq.
Love Consumer Law
2500 Northwinds Parkway
Suite 330
Alpharetta, Georgia 30009
(404) 855-3600
tlove@loveconsumerlaw.com


Max S. Morgan, Esquire*
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com


(*pro hac vice application forthcoming)