**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **LATRICE AUSTIN**, *on behalf of herself and all others similarly situated,*<br><br>*Plaintiff,*<br>v.<br><br>**BETTER DEBT SOLUTIONS, LLC**,<br><br>*Defendant*. | Civil Case No.: 1:25-cv-01103-SDG<br><br>**FIRST AMENDED COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of the illegal marketing practices of Defendant, Better Debt Solutions, LLC ("BDS" or "Defendant") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2. BDS is a company offering "debt relief solutions" to individual consumers across the United States.

3. To advertise and solicit new consumers, BDS makes, or has made on its behalf, telemarketing calls soliciting its debt relief services.

4. These calls are made to cell phones using an artificial or prerecorded voice, without the prior express consent of consumers.

5. The TCPA prohibits making calls to cellular telephone numbers using an artificial or prerecorded voice without the prior express consent.

6. Accordingly, Ms. Austin brings this action on behalf of herself and a class of similarly situated individuals.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

8. This Court has jurisdiction over BDS because BDS conducts business transactions in this District and made calls into this District targeting residents of this District as part of the business it conducts in this District.

9. Specifically, BDS targeted a resident of this District who's cellular telephone number has an area code (i.e., 678) that is associated with this District – confirming that Defendant *knew* it was calling into this District.

10. Venue is proper in this District because Defendant targeted a resident of this District and called into this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

11. Plaintiff Latrice Austin ("Ms. Austin") is, and at all times mentioned

herein was, a citizen and resident of Covington, Georgia.

12. Plaintiff is, and at all times mentioned herein was, a “person” as defined by 47 U.S.C. § 153(39).

13. Defendant is, and at all times mentioned herein was a limited liability company organized and existing under the laws of the state of California with a principal office address located at 2525 Main Street Suite 500, Irvine, CA 92614.

14. Defendant may be served via its registered agent, Nima Asadi, Esq., located at 19200 Von Karman Ave, Suite 600, Irvine, CA 92612.

15. Defendant is, and at all times mentioned herein was, a “person” as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

16. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that “[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]” and found that federal legislation was needed because “telemarketers [could] evade [state-law] prohibitions through interstate operations.’” *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

17. Relevant here, section 227(b)(1)(A)(iii) of the TCPA sets forth

restrictions on the use of automated telephone equipment and prerecorded voice calls, and provides in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> *****
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

18. A violation of 47 U.S.C. § 227(b)(1)(A)(iii) carries statutory damages of $500 to $1,500 per call. *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

19. BDS is a company offering "debt relief solutions" to individual consumers across the United States.

20. To advertise and solicit new consumers, BDS makes, or has made on its behalf, telemarketing calls soliciting its debt relief services.

21. Upon information and belief, BDS rotates that telephone numbers it

uses to make outbound calls to avoid spam trackers, avoid their outbound numbers being blocked, and conceal its illegal activity.

22. Upon information and belief, BDS uses a telephone system that will detect when a live human being answers the phone.

23. Upon information and belief, if a live human answers the phone, BDS' system will connect the consumer to one of BDS' representatives in BDS' call center to solicit that consumer.

24. Upon information and belief, if the call is not answered, BDS' system will detect an answer machine and leave a prerecorded voice message on the consumer's answering machine to prompt that consumer to call BDS back so that BDS can attempt to solicit that consumer.

25. Ms. Austin is the user of her personal cellular telephone number (678)-XXX-3525.

26. On December 10, 2024, Ms. Austin received a prerecorded call from Defendant.

27. The call came from telephone number (929) 748-4315.

28. Ms. Austin did not answer the call.

29. The call left the following prerecorded voicemail message on Ms.

Austin's voicemail:

> Hey there! This is Jessica again from your loan processing team. I've been trying to reach out to you regarding your loan application, but we haven't been able to connect yet. We just need to verify a few final details. Mostly really its your income and a few other minor items just to complete your approval. Could you please return my call at (877) 867-5139. It would be ideal if we could finalize this before 5pm pacific time today. However, if you changed your mind, would like to cancel your application or no longer wish to proceed, please feel free to let us know as well when you give us a call back. Make sure to mention your application ID just for a faster process. Your application ID is A as in Apple, H as in Hotel, Z as in Zebra 34578. Once again that number is A as in Apple, H as in Hotel, Z as in Zebra 34578. And also just a reminder, my number is (877) 867-5139. I'm looking forward to hearing from you soon. Thank you so much and have a wonderful day.

30. Ms. Austin never submitted a loan application to Defendant.

31. Upon information and belief, Defendant uses a vague script referencing a loan application to increase the chances that a consumer will call into Defendant's call center, giving Defendant an opportunity to solicit a consumer with its debt reliefrelated services.

32. Upon information and belief, Defendant does not state its identity in the voicemails to increase the chance of a call back and to avoid its illegal activity from being detected and traced back to Defendant.

33. On December 12, 2024, Ms. Austin received another prerecorded call from Defendant.

34. The call came from telephone number (645) 213-0416.

35. The call left the same prerecorded voicemail message on Ms. Austin's voicemail, as transcribed above.

36. Ms. Austin knew these voicemail messages were prerecorded because they were identical.

37. In addition, other consumers report receiving the same (or portions of the same) message on online consumer complaint websites related to robocalls.[1]

38. For example, "Daneil G." reported receiving this same message on November 5, 2024:

---

[1] *See* https://800notes.com/Phone.aspx/1-877-867-5139/4 (last accessed April 14, 2025); https://directory.youmail.com/phone/413-848-6093 (last accessed April 14, 2025); https://800notes.com/Phone.aspx/1-877-867-5139/6 (last accessed April 14, 2025).

**Daniel G.**
5 Nov 2024 | 3 replies

0

I rejected the call, and the bot left a voicemail with the first part cut off:
"...application that we haven't been able to connect yet. We just need to verify a few final details mostly related to your income and a few other minor items, just to complete your approval. Could you please return my call at 877-867-5139? It would be ideal if we could finalize this before 5pm Pacific Time today. However, if you've changed your mind, would like to cancel your application, or no longer wish to proceed, please feel free to let us know as well. When you give us a call back, make sure to mention your Application ID just for a faster process. Your Application ID is A as in apple, H as in hotel, Z as in zebra, 34578. Once again, that number is A as in apple, H as in hotel, Z as in zebra, 34578. And also, just a reminder: My number is 877-867-5139. I'm looking forward to hearing from you soon. Thank you so much, and have a wonderful day."

*Caller: 645-213-1175*
*Call type: Scam suspicion*

39. The fact that the "Application ID" in the messages Ms. Austin received and that third parties received were identical also shows that the messages were prerecorded and did not differ from consumer to consumer.

40. Upon information and belief, if the messages were not prerecorded, and were individualized, they would not use the same "Application ID".

41. On December 12, 2024, Ms. Austin received another call from Defendant.

42. The call came from a "private number" that did not display on her telephone.

43. Ms. Austin answered the call and a brief prerecorded message played

before the call was connected to a live representative.

44. Ms. Austin asked the live representative if she could speak to a supervisor and instructed the representative that she did not want further calls.

45. On December 17, 2024, Ms. Austin received another call from Defendant.

46. The call came from telephone number (708) 760-4739.

47. Ms. Austin answered this call.

48. Upon information and belief, if Ms. Austin did not answer the call, the same prerecorded message would have been left on her voicemail.

49. For example, other consumers report receiving calls from the same (708) 760-4739 telephone number, not answering, and receiving a voicemail the same as Plaintiff previously received:[2]

[2] https://800notes.com/Phone.aspx/1-645-213-0984 (last accessed April 14, 2025).


Wesley
29 Oct 2024

0

Same voice mail word for word, Hey there, this is Jessica again from your loan processing team. I've been trying to reach out to you regarding your loan application, but we haven't been able to connect yet. ... the original number that this voice mail came from was tagged a United States caller ID, number (708) 760-4739. Did not call back the noted 877-867-5139 from the voice mail. SCAM

*Caller: 708-760-4736*
*Call type: Scam suspicion*

Reply !

50. In an attempt to determine the true identity of the caller, Ms. Austin engaged with the caller and asked that the caller send her an email with some company information while she was on the phone.

51. Ms. Austin then received an email from "Alan Angeles" with the email address of "aangeles@betterdebtsolutions.com".

52. The email provided reviews of Defendant from Better Business Bureau, TrustPilot, and Google.

53. The email also provided Mr. Angeles direct telephone number, (949) 767-5581.

54. Before Ms. Austin concluded the call, Ms. Austin explained to Mr. Angeles that she requested the email to identify the actual company calling her. She further explained that she previously made do-not-call requests and that they were

not honored.  She again requested no further calls.

55. On December 18, 2024, Ms. Austin received another prerecorded call from Defendant.

56. The call came from telephone number (929) 748-4315.

57. The call left the same prerecorded voicemail message on Ms. Austin's voicemail, as transcribed above.

58. On December 19, 2024, Ms. Austin received another prerecorded call from Defendant.

59. The call came from telephone number (929) 747-5003.

60. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

61. On December 23, 2024, Ms. Austin received another prerecorded call from Defendant.

62. The call came from telephone number (464) 237-3212.

63. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

64. On December 30, 2024, Ms. Austin received another prerecorded call from Defendant.

65. The call came from telephone number (708) 464-5851.

66. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

67. On January 2, 2025, Ms. Austin received another prerecorded call from Defendant.

68. The call came from telephone number (464) 235-3673.

69. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

70. On January 3, 2025, Ms. Austin received another prerecorded call from Defendant.

71. The call came from telephone number (708) 464-5851.

72. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

73. On January 9, 2025, Ms. Austin received another prerecorded call from Defendant.

74. The call came from telephone number (464) 235-3673.

75. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

76. On January 10, 2025, Ms. Austin received another prerecorded call from Defendant.

77. The call came from telephone number (708) 464-5851.

78. The call left the same prerecorded message on her voicemail message on Ms. Austin’s voicemail, as transcribed above

79. On January 15, 2025, Ms. Austin received another prerecorded call from Defendant.

80. The call came from telephone number (364) 224-4212.

81. The call left the same prerecorded message on her voicemail message on Ms. Austin’s voicemail, as transcribed above.

82. On January 20, 2025, Ms. Austin received another prerecorded call from Defendant.

83. The call came from telephone number (405) 289-5392.

84. The call left the same prerecorded message on her voicemail message on Ms. Austin’s voicemail, as transcribed above.

85. On January 24, 2025, Ms. Austin received another prerecorded call from Defendant.

86. The call came from telephone number (662) 850-4895.

87. The call left the same prerecorded message on her voicemail message on Ms. Austin's voicemail, as transcribed above.

88. Upon information and belief, Defendant blasts out thousands of calls in an effort to solicit its services to consumers.

89. Upon information and belief, when consumers answer the phone, Defendant's phone system transfers the calls to its live representatives that stand ready to solicit the consumers that answer the phone.

90. Upon information and belief, when consumers do not answer the phone, Defendant's phone system leaves a voicemail message. in an effort to generate return calls from consumers that may be looking for loans.

91. Upon information and belief, Defendant obtains lists of telephone numbers of consumers that did not consent to be called.

92. Ms. Austin did not provide prior express invitation or permission or consent for the telephone calls she received.

93. Defendant's violations were, at a minimum, negligent.

94. Alternatively, Defendant's violations were willful and knowing.

95. Ms. Austin and the class were damaged by the violations alleged herein. In addition to using their cellular data, storage, and battery life, they suffered an

invasion of privacy, aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls. Their privacy was improperly invaded, the Defendant's calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted telephone calls. Defendant's telephone calls were annoying and a nuisance and wasted the time of Ms. Austin and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY

96. Upon information and belief, Defendant used automated systems to make outbound telephonic sales calls that utilized an artificial or prerecorded voice to hundreds if not thousands of consumers' cellular telephones across the U.S.

97. Accordingly, for violations of 47 U.S.C. § 227(b), Ms. Austin is entitled to $500 per call. *See* 47 U.S.C. § 227(b)(3).

98. Ms. Austin is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

99. Defendant, directly, individually, jointly, and/or in concert with

another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

100. Upon information and belief, Defendant placed the calls at issue itself and maintains its own call center.

101. For example, when Ms. Austin answered the phone, she was connected directly to Defendant's representatives, such as Mr. Angeles.

102. In addition, former employees have left publicly available employment reviews of Defendant that demonstrate that Defendant's employees work within a call center environment:[3]

[3] https://www.indeed.com/cmp/Better-Debt-Solutions/reviews?fcountry=US&sort=rating_asc (last accessed April 14, 2025); https://www.glassdoor.com/Reviews/Better-Debt-Solutions-Reviews-E7993475.htm?sort.sortType=OR&sort.ascending=true&filter.iso3Language=eng&filter.employmentStatus=REGULAR&filter.employmentStatus=PART_TIME (last accessed April 14, 2025).

1.0 ★☆☆☆☆

**Bad upper management**

Sales Representative (Former Employee) - Irvine, CA - March 14, 2024

Get on the phones, take more calls, call more people, talk to more people, talk some more. Management is wack. They crack the whip and expect perfection. Best part of the day was clocking out

✓ **Pros**

Casual dress everyday, occasional free catered lunches

✗ **Cons**

Management and the owner

Was this review helpful?

Yes No

Featured

Feb 24, 2025

1.0 ★☆☆☆☆

## dont work here full on dictatorship/ micro management

Sales/closer

Former employee, less than 1 year

Irvine, CA

✗ Recommend ○ CEO approval ✗ Business outlook

**Pros**

this place is a scam they do so much low debt corn pop deals you'll never make money here go anywhere else where the avg debt load is higher 7,500 theyre leads are trash trust me they are trying to over hire and get everything they can scrap hunters

**Cons**

cant ever be on your phone management is up your behind like Germany in the 40s i wouldn't even come to write a review if i didn't think i was helping out the next guy this place has over 250 employees they don't care about you this place is a MILL

hire and fire that's what they do here trust me and this review go somewhere else unless you like having to hide your phone all day like a child!

**Advice to Management**

you guys need to figure it out how ever you are already so far in the wrong direction its probably beyond to late to change culture

Diversity, Equity, and Inclusion (dei) is strong here and not for the right reasons

Helpful Share 1



1.0 ★☆☆☆☆ Nov 26, 2023

**RUN!!! Don't waste your time**

Sales trainer

Former employee, less than 1 year | Irvine, CA

✕ Recommend ○ CEO approval ✕ Business outlook

**Pros**

The workers are awesome that's about it!

**Cons**

The company is a scam, they sale you on "we are helping people get out debt" but in reality they are getting into MORE debt. The office is set up like a stock market floor, which tells you they only care about numbers. I worked her for 3 months and was so happy to find another job and get out of there.

Upper management doesn't communicate with floor employees and HR is a joke for writing people up for being 1 minute late. Again don't waste your time.

**Advice to Management**

Shut down this scam of a company before your clients report you.

Helpful Share 4

103. Defendant has also admitted that it has its own call centers in responses to consumer complaints about unsolicited calls[4]:

[4] https://www.bbb.org/us/ca/irvine/profile/debt-relief-service-referral/better-debt-solutions-1126-1000098898/complaints (last accessed April 14, 2025)

## Initial Complaint

**Date:** 08/01/2024

**Type:** Service or Repair Issues

**Status:** Answered

They need to hire a call center that does not fraudulently claim to be other businesses and financial institutions. Their call center claims to be 4 or 5 different lenders that are not associated with BDS or the call center at all and then redirects callers to BDS under false pretenses.This happened July 29th. The call center claimed to be Supreme lending, Exact lending, and True path lending, I spoke to all these lenders personally on their actual numbers and none of them have any affiliation with the call center, Lendvia, or Better Debt Solutions. The call center also calls numbers on the do not call registry. They lie about what financial institutions they work for then ONLY redirect to Better Debt Solutions after fraudulently representing themselves and who they are working for.

### Business Response

**Date:** 10/04/2024

Dear Better Business Bureau and Ms. ******* *******,

Thank you for bringing this matter to our attention. After conducting a thorough review of our records, we have been unable to verify or match any of the information you provided in our system, including any connection to the lenders or call centers you mentioned. As such, we are unable to move forward with an investigation based on the details currently available.

To proceed, we require more specific information, such as the exact phone numbers that contacted you, the names of the representatives involved, and any other relevant documentation that can help us trace the origin of these calls. Without such details, it is challenging for us to substantiate the claims you've made regarding our company or our partners.

Please note that we take matters of compliance very seriously, and we would never tolerate any fraudulent representation by our call centers or marketing partners. We are fully committed to conducting a thorough investigation once we have the necessary details from you.
We kindly ask you to provide the required information so we can assist you further. Until we receive additional information, there is no further action we can take.
Thank you for your understanding, and we look forward to your response to help us resolve this matter.
Sincerely,
Compliance Department
Better Debt Solutions

**Initial Complaint**

**Date:** 09/27/2024

**Type:** Sales and Advertising Issues

**Status:** Answered

Business calls multiple times per day offering loans, leaves voice mails in robot voice, calls from different numbers to circumvent blocking features, is engaged in harassing behavior.

BDS **Business Response**

**Date:** 10/04/2024

Dear Better Business Bureau and Mr. **** *****,

Thank you for reaching out and providing us with this opportunity to address Mr. ******* concerns. We sincerely apologize for any inconvenience that may have been caused.

Upon reviewing the details of the complaint, we would like to clarify that Mr. ***** initially provided his contact information through a social media inquiry, requesting assistance regarding our services. It is our goal to assist individuals who express interest in our offerings, but we certainly understand that further contact may no longer be desired.
Regarding the call frequency: After receiving this complaint, we immediately investigated the issue and determined that all calls were made as part of a follow-up to Mr. ****** original inquiry. Nevertheless, we understand that this follow-up may have been perceived as excessive, and for that, we sincerely apologize.

Immediate Action: We have added Mr. ******* phone number to our internal Do Not Contact (DNC) list, and no further communication will be made. This ensures that Mr. ***** will no longer receive calls, emails, or any form of contact from our company.
We take concerns like this very seriously and will continue to review our practices to ensure that we maintain a balance between responding to inquiries and respecting individual preferences.
Once again, we apologize for any frustration caused and thank you for bringing this to our attention. Please feel free to reach out if any additional questions or concerns arise.
Sincerely,
Compliance Department

104. To the extent Defendant outsourced its illegal robocalling, it is still liable for calls that violate the TCPA.

105. To the extent Defendant outsourced its illegal robocalling, Plaintiff pleads in the alternative that Defendant is liable for its third-parties' actions under one or more theories of vicarious liability because it took steps to cause the calls to be made, and because the calls were made pursuant to Defendant's actual authority, apparent authority and/or ratification.

106. On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

107. *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

108. Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

109. To the extent Defendant outsourced its outbound telemarketing calls to a third party, Defendant would have exerted control over such third-party.

110. For example, Defendant would have integrated its systems directly with any third-party's systems so that the calls could be routed directly to Defendant's representatives when an individual answered the telephone, as demonstrated by Ms. Austin's experience.

111. To the extent Defendant outsourced its outbound telemarketing calls to a third party, Defendant would have executed an agreement with such third party, providing instructions to such third party and authorizing that the calls be made on behalf of Defendant.

## CLASS ACTION ALLEGATIONS

112. Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of the proposed "Class," as defined as follows:

> Plaintiff and all persons and entities throughout the United States to whom Defendant placed a call, or had a call placed on its behalf, directed to a number assigned to a cellular telephone service, with an artificial or prerecorded voice, from four years from the filing date of this class action complaint to the date of class certification.

113. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs

and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

114. The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

115. The Defendant's records will reveal the precise number of class members.

116. The exact number and identities of the people who fit within the Class are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

a. The time period(s) during which Defendant or its agent(s) made the telephone calls;
b. The telephone numbers to which Defendant or its agent(s) made telephone calls;
c. The telephone numbers for which Defendant had prior express written consent;
d. The purposes of such telephone calls; and
e. The names and addresses of Class members.

117. Upon information and belief, the Class is comprised of hundreds, if not thousands, of individuals.

118. There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

a. Whether Defendant (or someone acting on its behalf) makes telemarketing calls;

b. Whether Defendant uses artificial or prerecorded voices to make its telemarketing calls to cellular telephones;

c. Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

d. Whether Defendant had "prior express consent" under the TCPA to call the cell phone numbers of Plaintiff and Class Members;

e. Whether Defendant's statutory violations were willful and knowing; and

f. Whether Defendant should be enjoined from engaging in such conduct in the future.

119. Plaintiff is a member of the Class in that Defendant placed a call to her cellular telephone number that utilized artificial or prerecorded voices, without her prior express written consent.

120. Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

121. Plaintiff and all putative Members of the Class have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Class spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

122. Plaintiff has no interests antagonistic to, or in conflict with, the Class.

123. Plaintiff is an adequate representative of the Class and will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent her and the Class. Plaintiff is prepared to participate in discovery and depositions and otherwise fulfill her obligations as a class representative.

124. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

125. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

126. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

127. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. 227(b)**
**(On Behalf of Plaintiff and the Prerecorded Call Class)**

128. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed to Ms. Austin's cellular telephone number, for non-emergency purposes and without her consent.

129. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Ms. Austin and the members of the class are entitled to damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the representatives of the Class and appointing her counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages; and

F. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** April 14, 2025

*/s/John A. Love*______________
John A. Love, Esq.
Love Consumer Law
2500 Northwinds Parkway
Suite 330
Alpharetta, Georgia 30009
(404) 855-3600
tlove@loveconsumerlaw.com

Max S. Morgan, Esquire*
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

(*admitted *pro hac* vice)

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused a copy of the foregoing to be served upon counsel of record by filing a copy via the Court's electronic filing system.

This 14th day of April, 2025.

*/s/John A. Love*
John A. Love
Counsel for Plaintiff