**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LATRICE AUSTIN, *on behalf of herself and all others similarly situated*,<br>Plaintiff,<br>v.<br>BETTER DEBT SOLUTIONS, LLC,<br>Defendant. | Civil Action No.<br>1:25-cv-01103-SDG |

**OPINION AND ORDER**

This case is before the Court on Defendant Better Debt Solutions, LLC's (BDS) motions to strike and to dismiss for failure to state a claim [ECFs 15, 25]. Because Plaintiff Latrice Austin has plausibly alleged that BDS violated the Telephone Consumer Protection Act (TCPA), BDS' motion to dismiss is **DENIED**. Because Austin's proposed class is not facially uncertifiable, BDS' motion to strike is **DENIED**.

## I. BACKGROUND[1]

This is a putative class action under the TCPA, 47 U.S.C. § 227, *et seq.* Austin is a Georgia resident and the owner of a cell phone.[2] Between December 10, 2024 and January 24, 2025, Austin received a series of unsolicited phone calls on her cell

---

1 "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999).

2 ECF 19, ¶¶ 11, 25.

phone.[3] The calls came from different numbers, but 13 of them left an identical prerecorded voicemail message.[4] The voicemails purport to be from "Jessica . . . from your loan processing team."[5] According to the voicemails, Jessica had been trying to reach Austin about her loan application, and Jessica needed to verify some details with Austin so the loan could be approved.[6] The voicemails provided identical callback numbers (877-867-5139) and referred to the same alphanumeric application identifier, "AHZ34578."[7] However, Austin did not submit a loan application.[8]

After receiving multiple such voicemails, Austin answered a call from a private phone number.[9] A brief prerecorded message played, and then Austin was connected to a live representative.[10] Austin told the representative she did not want any further calls.[11]

---

3 *Id.* ¶¶ 26–87.

4 *Id.* ¶¶ 29, 35, 57, 60, 63, 66, 69, 72, 75, 78, 81, 84, 87.

5 *Id.* ¶ 29.

6 *Id.*

7 *Id.*

8 *Id.* ¶ 30.

9 *Id.* ¶¶ 41–44.

10 *Id.*

11 *Id.*

Several days later, Austin received another phone call, this one from the phone number (708) 760-4739.[12] She answered it, and the caller identified himself as "Alan Angeles" from BDS.[13] Austin told Angeles that she had previously requested not to be called, and she repeated her request.[14] The next day, Austin received another phone call from an unfamiliar number, which left the by-now familiar voicemail from "Jessica."[15]

The voicemail saga prompted Austin to do some internet sleuthing. Indeed, other consumers reported receiving identical voicemails, down to the same purported caller ("Jessica"), toll-free callback number (877-867-5139), and application ID (AHZ34578).[16] In particular, one consumer reported that he received the same voicemail from the (708) 760-4739 phone number that connected Austin with Alan Angeles from BDS.[17]

Austin filed a class action complaint against BDS in March 2025.[18] BDS moved to dismiss the complaint and also moved to strike the class allegations.[19]

---

12 *Id.* ¶¶ 45, 46.

13 *Id.* ¶¶ 50, 51.

14 *Id.* ¶ 54.

15 *Id.* ¶¶ 55–57.

16 *Id.* ¶¶ 37, 38, 49.

17 *Id.* ¶ 49.

18 ECF 1.

19 ECFs 14, 15.

Austin then filed a first amended complaint, which BDS also moved to dismiss.[20] While BDS did not renew its motion to strike the class allegations, the class allegations in the amended complaint are essentially identical to those in the initial complaint.[21]

## II. BDS' MOTION TO DISMISS

BDS moves to dismiss the amended complaint, arguing that Austin has not plausibly alleged that BDS made the calls at issue, or that the calls she received were prerecorded or artificial, as required to state a TCPA claim.[22] However, construing the allegations of the complaint in the light most favorable to Austin, the Court concludes she has plausibly alleged the necessary elements of her claim.

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

20 ECFs 19, 25.

21 *Compare* ECF 1, ¶¶ 84–99, *with* ECF 19, ¶¶ 112–127.

22 *See generally* ECF 25.

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). A complaint is plausible on its face when the plaintiff pleads facts sufficient for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The principle that the Court must accept all well-pleaded facts as true at this stage does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

**B. Application**

As relevant here, the TCPA prohibits certain unsolicited phone calls that utilize prerecorded messages. *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1252 (M.D. Fla. 2012) (citing 47 U.S.C. § 227(b)(1)(A)(iii)). To state a TCPA claim for calls made to a cell phone, Austin must plausibly allege: "(1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing

system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Id.* at 1253.

BDS takes issue with the first two elements, arguing that Austin has not plausibly alleged that it was BDS who left her the voicemails, nor has she plausibly alleged that the voicemails were prerecorded or artificial. But, drawing all reasonable inferences in Austin's favor, the amended complaint states a plausible TCPA claim.

As to the first element, Austin plainly alleges that it was BDS who made the calls to her cell phone.[23] To the extent that *Twombly* and *Iqbal* require more, *see, e.g.*, *Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone") (collecting cases), Austin has alleged that: she received 15 calls in relatively quick succession; those calls she did not answer left her identical voicemails; another consumer received the same voicemail from (708) 760-4739; and when Austin answered a call from (708) 760-4739, a BDS employee was on the other end. These allegations permit the reasonable inference that BDS was the one who called Austin and left the identical voicemails.

---

23 *See, e.g.*, ECF 19, ¶¶ 26, 33, 41.

As to the second element, Austin has plausibly alleged that the calls were prerecorded. Austin alleges that the 13 voicemails she received were identical, and so "they all bear the hallmark of a recording—an identical message." *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1313 (11th Cir. 2020). Another court in this circuit has suggested that, to satisfy *Twombly* and *Iqbal*, "a TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS." *Moore v. Online Info. Servs., Inc.*, No. 13-61167-CIV, 2014 WL 11696696, at *2 (S.D. Fla. Jan. 10, 2014) (quoting *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012)). Austin has done so here by describing "the generic content of the message [s]he received." *Id.* Taken together, Austin has plausibly alleged that BDS made the calls to her cell phone and left the prerecorded voicemails.

Accordingly, BDS' motion to dismiss is denied.

## III. BDS' MOTION TO STRIKE

Austin brings this action on behalf of a proposed class, defined as:

> Plaintiff and all persons and entities throughout the United States to whom Defendant placed a call, or had a call placed on its behalf, directed to a number assigned to a cellular telephone service, with an artificial or

> prerecorded voice, from four years from the filing date of this class action complaint to the date of class certification.[24]

BDS moves to strike the class allegations as facially uncertifiable, arguing that the proposed class definition includes individuals who consented to the calls and is therefore overbroad; and that the proposed class definition seeks to expand the scope of the class beyond the TCPA's four-year statute of limitations.[25] However, BDS' critiques of Austin's proposed class definition do not require that her class allegations be stricken, and therefore BDS' motion is denied.

Under Fed. R. Civ. P. 12 (f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike is "a drastic remedy to be resorted to only when required for the purposes of justice . . . [and] should be granted only when the pleading to be stricken has no possible relation to the controversy." *Stephens v. Tr. for Pub. Land*, 479 F. Supp. 2d 1341, 1346 (N.D. Ga. 2007) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962)). In a 2024 decision from this district, Judge Cohen surveyed the caselaw and concluded that, while some courts have entertained motions to strike class allegations prior to a motion to certify, "recent decisions from courts in this Circuit have . . . 'view[ed]

---

24 *Id.* ¶ 112.

25 *See generally* ECF 15.

the Rule 23 factors through the lens of the Rule 12(f) standard for motions to strike.'" *Lourie v. Papa John's Int'l, Inc.*, No. 1:23-CV-4320-MHC, 2024 WL 5497082, at *7 (N.D. Ga. June 25, 2024) (quoting *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 700 (S.D. Fla. 2014)). Thus, the Court will apply Fed. R. Civ. P. 12(f)'s "clear legal standard for striking material from a pleading." *Lourie*, 2024 WL 5497082, at *7 (quoting *Desmond v. Citimortgage, Inc.*, No. 1:12-CV-23088, 2015 WL 845571, at *5 (S.D. Fla. Feb. 25, 2015)).

The Court concludes there is nothing "redundant, immaterial, impertinent, or scandalous" about Austin's proposed class, and so striking the class allegations is not warranted. Moreover, BDS has not shown that Austin's proposed class is facially uncertifiable on the pleadings. The Fifth Circuit considered a similar question of whether issues of individual consent prevented the certification of a TCPA class in *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008).[26] In reversing the district court's class certification, the Fifth Circuit cautioned that "we

---

26 The Court notes that *Gene* involved a claim under the TCPA's prohibition on unsolicited advertisements delivered via fax machine, 47 U.S.C. § 227(b)(1)(C), *see Gene*, 541 F.3d at 322, whereas Austin's claim is based on § 227(b)(1)(A). For either claim, consent is an issue that is relevant to the class certification analysis. *See Gene*, 541 F.3d at 327 ("the issue of consent will entirely determine how the proposed class-action trial will be conducted on the merits"); *Augustin*, 43 F. Supp. 3d at 1253 (for a claim under § 227(b)(1)(A), holding that the plaintiff must allege a lack of prior express consent, but the defendant bears the burden of establishing prior consent).

do not hold as a matter of law that the consent requirement in the case before us defeats the possibility of class certification," only that the plaintiff "has failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class involved in this case." *Id.* at 329. This is consistent with the Eleventh Circuit's observation that "precedent [ ] counsels that the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008).

Nor does Austin's proposed class violate the TCPA's statute of limitations, which provides that such a civil action "may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). The proposed class is defined to include those who received a prohibited call up to "four years from the filing date of this class action complaint."[27] Such claims fall within the TCPA's statute of limitations. Accordingly, BDS' motion to strike is denied.

Lastly, the Court pauses to note that BDS has cited to the Supreme Court's seminal class action decision, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011),

---

[27] ECF 19, ¶ 112.

multiple times for the following quotation: "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a class wide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations."[28] However, the Court has reviewed *Dukes* and has not located this quotation, nor has the Court identified a reference to Fed. R. Civ. P. 12(f); the Court did identify a lone (unrelated) reference to an unsuccessful motion to strike certain evidence at the class certification stage, *see id.* at 346–47. Before pursuing this matter further, the Court will require BDS to explain this apparent discrepancy.

## IV. CONCLUSION

BDS' motion to strike [ECF 15] is **DENIED**. BDS' motion to dismiss [ECF 25] is **DENIED**. BDS shall file its answer to Austin's first amended complaint within 14 days of this Order. The parties are **DIRECTED** to file the Joint Preliminary Report and Discovery Plan required by LR 16.2, NDGa, within 14 days of BDS' answer.

---

[28] ECF 15, at 4; ECF 28, at 3.

Within 7 days of this Order, BDS is **ORDERED TO SHOW CAUSE** as to why it should not be sanctioned for its apparently inaccurate quotations from *Dukes*.

The Clerk is **DIRECTED** to submit this Order to undersigned after 7 days.

**SO ORDERED** this 17th day of February, 2026.

Steven D. Grimberg
United States District Judge