## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **LATRICE AUSTIN**, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 1:25-cv-01103-SDG |
| v. | District Judge Steven D. Grimberg |
| **BETTER DEBT SOLUTIONS, LLC,** | |
| Defendant. | |

### DEFENDANT BETTER DEBT SOLUTIONS, LLC'S, RESPONSE TO ORDER TO SHOW CAUSE

## I.    INTRODUCTION

This Order to Show Cause presents an opportunity for the Court to distinguish between errors caused by human imperfection, on the one hand, and those caused by the reckless use of GenAI, on the other.

The scourge of GenAI infests courthouses across the nation. It threatens to undermine the profession of law and the ability of an entire generation of young attorneys to research, analyze, and apply sound legal judgment. Its irresponsible use must be rooted out and dealt with severely.

On the other hand, understandable mistakes made by young lawyers that may slip past reviewing attorneys should not be subject to the same heavy penalties. The

1

standards imposed by Rule 11 and applicable ethical requirements are high—as they must be to maintain integrity and the efficient search for truth—but they are also forgiving and based on standards of reasonableness, not perfection.

As set forth below, the error leading to this show cause was caused by a human mistake—not GenAI. The mistake itself was an accidental, but innocent, misattribution of a correct principle of law—apparently copied and pasted from a First Circuit decision but misattributed to the Supreme Court decision upon which the First Circuit had relied. This is the sort of citation error a young attorney might be expected to make—and one that would not be easily detected even with several layers of supervisorial review. It is an unfortunate—but hopefully forgivable—oversight responsible law firms work assiduously to avoid, but that can never be fully eradicated so long as human beings continue to perform legal work.

For the reasons set forth below, and in the attached declarations, therefore, Troutman Amin, LLP, respectfully requests the court decline to sanction the firm, its former associates, or the Defendant in this matter.

## II.  TROUTMAN AMIN, LLP IS A HIGHLY REGARDED TCPA LITIGATION DEFENSE FIRM THAT BANS THE USE OF GENAI AND TAKES SUPERVISORY OVERSIGHT SERIOUSLY.

There is some irony to a Troutman Amin, LLP, brief misattributing a citation.

The firm's partner, Eric J. Troutman, has been one of the nation's loudest critics of attorneys using GenAI products in the practice of law owing to the

prevalence of mistakes in briefing caused by the technology. In a video published on the firm's YouTube channel two years ago, he pledged Troutman Amin, LLP, lawyers would never use GenAI.[1]

Troutman has also published repeatedly regarding law firms and attorneys facing sanctions due to their irresponsible use of GenAI in the practice of law. Eric "Czar" Troutman, *It's Over for GenAI in the Practice of Law—and I told You So* (Feb. 16, 2026), https://tcpaworld.com/2026/02/16/its-over-for-genai-in-the-practice-of-law-and-i-told-you-so/; Eric "Czar" Troutman, *No Patience For It: Courts Increase Penalties for GenAI Usage As America's Worst Law Firms Continue to Use "Troubling" Technology* (Feb. 18, 2026), https://tcpaworld.com/2026/02/18/no-patience-for-it-courts-increase-penalties-for-genai-usage-as-americas-worst-law-firms-continue-to-use-troubling-technology/.[2]

And Troutman practices what it preaches. The firm has adopted a "zero tolerance" policy for attorneys at the firm. Under that policy,—any lawyer caught using GenAI in connection with the substantive practice of law would be immediately terminated from the firm. *See* Eric "Czar" Troutman, PRESS RELEASE: Powerhouse Litigation Shop Troutman Amin, LLP Bucks Legal AI

---

[1] Troutman Amin, LLP, *AI in the LAW? Czar's BLASTS Lawyers That Use AI in their Practices--Says Has NO PLACE In Law*, YouTube (Feb. 21, 2024), https://www.youtube.com/watch?v=q_L7FNuE50s.
[2] A search of "GenAI" on TCPAWorld.com will result in at least seven (7) other such articles (https://tcpaworld.com/?s=GenAI).

Trend: Announces "Zero Tolerance" Policy For Generative AI Usage By Firm Attorneys, (Jan. 23, 2026), https://tcpaworld.com/2026/01/23/press-release-powerhouse-litigation-shop-troutman-amin-llp-bucks-legal-ai-trend-announces-zero-tolerance-policy-for-generative-ai-usage-by-firm-attorneys/.

Summed up, Troutman Amin, LLP, has dedicated itself to the "old way" of doing things believing clients, courts—and ultimately the search for truth—are better served by a human's good judgment and hard work than artificial "intelligence."

In addition to a strict ban on the use of GenAI, Troutman Amin, LLP, also deploys strict oversight of associates and briefing. Absent exigent circumstances, all briefs are to be presented to a partner days before they are submitted to a client or the court. Virtually all briefs, therefore, are reviewed not just by the signing and submitting lawyer, but by a partner-level litigator at Troutman Amin, LLP, assuring the firm's high standards are adhered to across all defenses and for all clients nationwide. That being said, partners at Troutman Amin, LLP, are generally *not* searching to confirm every cite attribution is correct when reviewing briefs submitted by senior associates like Jenniffer Cabrera. While partners will sometimes check cites—particularly on a novel issue—such a citation review is particularly unlikely on a well-tread issue of procedural law.

Unfortunately, this review process did not detect the misattributions at issue

4

here. The Motion to Strike was initially drafted by former associate Kayla Kershen, then a newly admitted associate.[3] Troutman Decl. at ¶ 12. The brief was then reviewed by former senior associate Jenniffer Cabrera[4]—an attorney with over two and a half years of experience practicing exclusively in this area of law—who was the attorney handling the case for the firm. *Id*. After several iterations of edits between Counsel Cabrera and Counsel Kershen, the brief was reviewed by Counsel Troutman for substance before submission to local counsel, Brandon O. Moulard, for review to assure compliance with local rules and practice. *Id*. at 14; *see also* Declaration of Brandon O. Moulard ("Moulard Decl.") at ¶¶ 5, 8-13. Thus, four sets of eyes reviewed the brief, but none caught the misattribution at issue.

Unfortunately, Counsel Cabrera acted inconsistent with firm practice by failing to timely provide the draft reply supporting the motion to either Counsel Troutman or Counsel Moulard prior to submission to the Court. Troutman Decl. at ¶ 14. In truth, however, it likely would not have mattered. Neither Counsel Troutman nor Counsel Moulard likely would have performed citation attribution review as neither had any reason to suspect a misattribution had taken place—and Counsel Troutman reviewed the reply after submission and did not detect the misattribution.

---

[3] Counsel Kershen departed the law firm on July 2, 2025. Declaration of Eric J. Troutman in Support of Defendant Better Debt Solutions, LLC's Order to Show Cause ("Troutman Decl.") at ¶ 15.

[4] Counsel Cabrera departed the law firm in December 2025. *Id*.

*Id*.; Moulard Decl. at ¶¶ 14-15.

As set forth below, the mistaken attribution related to a correct principle of law—and one that was well-known to counsel Troutman. While Troutman will sometimes review cites to make sure they are properly attributed, it is not his usual practice to check each cite in a brief—especially where the principle of law is widely known. *Id*. at 9. Instead, senior associates like Counsel Cabrera—who sign and submit the briefs—remain primarily responsible for assuring the accuracy of quotes and citations in the brief. Of course, it is also anticipated that junior associate will correctly attribute cites in the first instance. Local counsel—here Counsel Moulard—is also expected to review each brief, but that review is anticipated to be limited to local rules and practice, not a complete review of each citation attribution in the brief. *Id*. at 13; Moulard Decl. at ¶¶ 8, 16.

## III. THE MISTAKE AT ISSUE WAS AN ACCIDENTAL, BUT INNOCENT, MISATTRIBUTION RELATED TO AN ESTABLISHED PRINCIPLE OF LAW AND NOT THE SORT OF ERROR LIKELY TO BE DETECTED BY SUPERVISOR REVIEW.

The practice of law is a profession—one that requires competence and care. "Judges in our nation's courts…need to be able to rely upon competent counsel…" *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351, at \*6 (S.D. Fla. May 20, 2025). It does not, however, require perfection. *See Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1226 (11th Cir. 2003) (finding no "bad faith" or warranted sanctions against attorneys that did not

detect fraudulently altered materials upon review, where those alterations were not "so blatant"); *Carter v. CACH, LLC*, No. 1:14-CV-2786-MHC-JKL, 2016 WL 11581052, at *4 (N.D. Ga. Nov. 30, 2016), *report and recommendation adopted,* No. 1:14-CV-2786-MHC, 2016 WL 11581047 (N.D. Ga. Dec. 27, 2016) (the court refused to impose sanctions against an attorney where the attorney's error was not "as obvious as Defendants suggest."); *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1263 (N.D. Ala. 2025) (stating "[t]o be clear, not every error in a motion is recklessness or more. To err is human, and minor typographical errors, even in citations, occasionally occur despite attorneys' best efforts.").

The applicable rules mandate a signing attorney act reasonably to assure the citations provided are correct and the legal contentions asserted have support in existing law. Federal Rule of Civil Procedure 11 provides: "(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:… (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(2).

The rule does not, however, impose strict liability for errors—only a showing

of objective bad faith in light of all circumstances. *See United States ex rel. Maxwell v. Kerr Mc-Gee Oil & Gas Corp.*, 2010 WL 582393, at *8 (D. Colo. Feb. 17, 2010) (quoting *Wartsila NSD North America, Inc. v. Hill International, Inc.*, 315 F.Supp.2d 623, 627–28 (D.N.J. 2004)) ("The imposition of Rule 11 sanctions is properly reserved for exceptional circumstances, and motions 'should not be made or threatened for minor, inconsequential violations of the standards.'"). *Sua sponte* Rule 11 sanctions are reviewed with "particular stringency." *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1351 (S.D. Fla. 2025) (quoting *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)). "[T]he Eleventh Circuit held that a higher 'standard—'akin to contempt'—applies when a court imposes Rule 11 sanctions sua sponte." *In re Engle Cases*, 283 F. Supp. 3d 1174, 1212 (M.D. Fla. 2017). Accordingly, proof of subjective bad faith is not required, rather "for sua sponte Rule 11 sanctions, the standard that should apply is the same one that applies under 28 U.S.C. § 1927 and the Court's inherent authority when a party makes a frivolous argument[]—**objective bad faith**." *Id*. at 1214 (**emphasis added**).

"Using objective bad faith as the threshold to support sua sponte Rule 11 sanctions ensures both that only egregious misconduct will be penalized while preserving Rule 11's incorporation of an objective reasonableness standard." *Id*. The statute imposes a "high standard" that requires the moving party to show that the

8

other side engaged in behavior that "grossly deviates from reasonable conduct." *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2006).

A party's "false statements alone do not indicate bad faith." *Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008). Nor do merely reckless misstatements, standing alone, "satisfy the inherent powers standard; there must be more." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017). The question is whether counsel's "conduct sunk so far beneath a reasonable standard of competence, much deeper than mere negligence, that it became essentially indistinguishable from bad faith." *Cordoba v. Dillard's Inc.,* 419 F.3d 1169, 1178 (11th Cir.2005) (citation omitted).

The mistake at issue here—although regrettable—cannot be said to have been caused by a reckless disregard for the accuracy of the briefing "much deeper than mere negligence." *Brown v. Great-W. Healthcare,* No. CIVA105CV2676RWSGGB, 2006 WL 211719, *1 (N.D. Ga. Jan. 26, 2006). Indeed, it looks like an understandable human error of the sort that easily evades proper supervisory review.

The problematic paragraph in the Motion to Strike (ECF No. 15) reads as follows:

To establish a viable class, a class action complaint must plead "the existence of a group of putative class members whose claims are susceptible of resolution on a class wide basis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). However, "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a class wide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Id*.

The Court is focused on the second quotation to *Dukes*. ECF No. 33 at pp. 10-11. However, both quotes provided in this paragraph are actually attributed to *Dukes* in error—not just the second one. This helps to explain what happened.

The paragraph at issue is lifted from portions of the First Circuit Court of Appeal's decision in *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013). *Manning* cites to *Dukes* for the position that a pleading must establish the "existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Manning,* 725 F.3d at 59 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)*).* This is the *precise* quote misattributed to *Dukes* in the Motion to Strike. It appears, therefore, an attorney copied and pasted the quote from *Manning* into the brief—including the cite to *Dukes* but overlooking that *Manning* was not quoting *Dukes* but merely citing to it.

That mistake carried over to the next sentence—the problematic quote the Court has focused on—reading "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's

class allegations." ECF No. 33 at pp. 10-11. Once again this is a *correct* citation to *Manning*—a precise quote—but with incorrect attribution to *Dukes.* This suggests counsel copied and pasted the entire content of the *Manning* paragraph and then omitted a portion of the quote and simply affixed an "*Id.*" indicating—correctly— that the quote was a continuation of the source material (*Manning*) but attributing the quote—incorrectly—to *Dukes*.[5]

Critically, however, although the problematic quote is not found in *Dukes*, it is a faithful rendition of a principle of law distilled by the First Circuit directly from Supreme Court decisions—including *Dukes* and *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). *Manning*, 725 F.3d 34 at 59. Although the quote was misattributed, it is a valid principle of law that supported the argument presented in the section of the briefs where it was found.

Indeed, the specific quote at issue has been either cited directly or referred to by no less than 50 decisions across numerous different jurisdictions.[6] It is irrefutable

---

[5] It appears Counsel Kershen then cribbed this portion of the Motion to Strike in framing out her argument as part of the reply brief. ECF No. 28 at p. 5. Presumably, Counsel Kershen did not return to the source material in drafting the Reply but simply relied on her own erroneous attribution in the motion itself.

[6] S*ee Cao v. Hungry Pot Darmouth Inc.*, No. 1:24-CV-11797-JEK, 2025 WL 1745685, at *3 (D. Mass. June 24, 2025); *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1272 (D. Colo. 2023); *Urella v. Verizon New England Inc.*, No. CV 22-11606-FDS, 2024 WL 1075300, at *5 (D. Mass. Mar. 12, 2024); *Preston v. World Travel Holdings, Inc.*, No. 1:23-CV-12389-JEK, 2024 WL 519548, at *4 (D. Mass. Feb. 9, 2024); *In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 707

F. Supp. 3d 103, 141 (D. Mass. 2023); *Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1, 6 (D. Mass. 2022); *Costa v. Dvinci Energy, Inc.*, 342 F.R.D. 38, 39 (D. Mass. 2022); *Tassinari v. Salvation Army Nat'l Corp.*, 610 F. Supp. 3d 343, 361 (D. Mass. 2022); *Sagar v. Kelly Auto. Grp., Inc.*, No. 21-CV-10540-PBS, 2021 WL 5567408, at *6 (D. Mass. Nov. 29, 2021); *Rovinelli v. Trans World Ent. Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, at *6 (D. Mass. Feb. 2, 2021); *Rain v. Connecticut Gen. Corp.*, No. CV 17-30115-MGM, 2019 WL 7604856, at *5 n.4 (D. Mass. Aug. 6, 2019); *McIntyre v. RentGrow, Inc.*, No. 18-CV-12141-ADB, 2019 WL 3494343, at *4 (D. Mass. Aug. 1, 2019); *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 268 (D. Mass. 2017); *In re: Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, No. 09-02067-NMG, 2016 WL 3212480, at *4 (D. Mass. June 9, 2016); *Ortiz v. Sig Sauer, Inc.*, 448 F. Supp. 3d 89, 99 (D.N.H. 2020); *Begley v. Windsor Surry Co.*, No. 17-CV-317-LM, 2018 WL 1401796, at *11 (D.N.H. Mar. 19, 2018); *5-Star Gen. Store v. Am. Express Co.*, 759 F. Supp. 3d 317, 322 (D.R.I. 2024); *Curry v. Fields Gifts, Inc.*, 744 F. Supp. 3d 1251, 1262 (D. Utah 2024); *Wilmuth v. Amazon.com Inc.*, No. 2:23-CV-01774-JNW, 2024 WL 5088337, at *4 (W.D. Wash. Dec. 12, 2024); *In re Tokai Pharms., Inc.*, No. SUCV20163725BLS2, 2018 WL 6977434, at *2 (Mass. Super. Dec. 17, 2018); *Hennessy v. Brookdale Senior Living Communities, Inc.*, No. 1784CV04215BLS2, 2018 WL 4427020, at *5 (Mass. Super. Aug. 1, 2018); *Christian v. LeafFilter N., LLC*, No. 25-CV-02866-CRB, 2025 WL 2337125, at *3 (N.D. Cal. Aug. 13, 2025); *In re Kia Hyundai Vehicle Theft Litig.*, No. 8:22-ML-03052-JVS (KESX), 2024 WL 2104571, at *2 (C.D. Cal. Apr. 22, 2024); *Vaccaro v. Altais*, No. 223CV04513ODWBFMX, 2023 WL 7003211, at *6 (C.D. Cal. Oct. 23, 2023); *Sattar v. Amazon.com, Inc.*, No. 5:23-CV-00086-MEMF (KKX), 2023 WL 12096890, at *10 (C.D. Cal. June 22, 2023); *Moon v. Cnty. of Orange*, No. SACV19258JVSKESX, 2020 WL 6145106, at *2 (C.D. Cal. Sept. 18, 2020), aff'd, No. 20-56076, 2021 WL 4936945 (9th Cir. Oct. 22, 2021); *Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSX), 2019 WL 580670, at *5 (C.D. Cal. Feb. 11, 2019), vacated and remanded, 824 F. App'x 537 (9th Cir. 2020); *Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB, 2015 WL 3999313, at *11 (C.D. Cal. June 17, 2015); *Andy Jang v. Asset Campus Hous.*, Inc., No. CV1501927BROPJWX, 2015 WL 12914161, at *2 (C.D. Cal. May 14, 2015); *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, No. CV 15-00153 BRO SPX, 2015 WL 1266787, at *3 (C.D. Cal. Mar. 18, 2015); *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO SHX, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015); *Nagel v. DFL Pizza, LLC*, No. 1:21-CV-00946-DDD-SBP, 2024 WL 5095298, at *3 (D. Colo. Dec. 4, 2024); *Kantzelis v. Com. Ins. Co.*, No. SUCV20163144BLS1, 2017 WL 7053905, at *3 (Mass. Super. Nov. 13, 2017); *Bafford v. Northrop Grumman*

legal doctrine—and constitutes more of an observation of what district courts *may* do when faced with an uncertifiable class definition, rather than what they *must* do. *See Pettis v. Empire Educ. Grp., Inc.*, No. 1:18-CV-4940-TWT, 2019 WL 13215356, at *1 (N.D. Ga. June 11, 2019) ("the Court may strike or dismiss class allegations when a defendant demonstrates from the face of [the] complaint that it will be impossible to certify the class[ ] alleged by the plaintiff[ ] regardless of the facts that the plaintiff[ ] may be able to prove") (internal quotations and citation omitted); *Goff v. LaSalle Bank, N.A.*, No. 09-CV-147-TMP-WMA, 2009 WL 10688475, at *3 (N.D. Ala. Sept. 16, 2009) ("When the unsuitability of class treatment as to one or more issues is clear from the face of the complaint…motions to strike those allegations may be properly filed and considered before expensive and exhaustive discovery is undertaken.").

Through that lens, the mistake here is mild and of little substance. While Supreme Court decisions are certainly binding on this Court—whereas First Circuit decisions are not—the principle elucidated by the misattributed quote is one of discretion afforded the court rather than any mandatory action to be taken by it. And

---

*Corp.*, No. 2:18-CV-10219-ODW (EX), 2025 WL 986978, at *12 (C.D. Cal. Apr. 2, 2025); *Lautemann v. Bird Rides, Inc.*, No. CV1810049PARAOX, 2019 WL 3037934, at *5 (C.D. Cal. May 31, 2019); *Fassina v. Liberty Mut. Fire Ins. Co.*, No. 22-CV-11466-DJC, 2024 WL 1018440, at *8 n.6 (D. Mass. Mar. 8, 2024); *Glasner v. Am. Econ. Ins. Co.*, No. 21-CV-11047-DJC, 2024 WL 1018449, at *6 n.6 (D. Mass. Mar. 8, 2024).

while the Supreme Court has not used the words Defendant's brief attributed to it, the First Circuit has distilled the Supreme Court's precedent into *precisely* those words—and courts across the nation have recognized their correctness time and time again.

At bottom, neither Counsel Cabrera nor Counsel Moulard (the signing attorneys) violated Rule 11. The legal contention asserted *does* have ample support—and the misattribution here was likely caused by a copy-and-paste error by a junior associate faithfully gleaned from an appellate court decision regarding a principle of law that is hardly controversial. That the Motion to Strike was then reviewed by multiple experienced attorneys before submission to the Court demonstrates that the firms involved did not display a lack of diligence and did not act unreasonably or with objective bad faith in the submission of the brief. *See Schwartz*, 341 F.3d at 1226 (declining to impose sanctions where counsel did not detect altered materials); *Carter*, 2016 WL 11581052, at *4 (finding sanctions unwarranted where the attorney's error was not made in bad faith or for improper purpose).

## IV.  THE COURT SHOULD DECLINE TO ISSUE A SANCTION IN AN EFFORT TO REWARD—RATHER THAN PUNISH—LAWYERS WHO RESIST IN THE USE OF GENAI AND MAINTAIN REASONABLE SUPERVISORY PRACTICES.

The Court in *Johnson* observed courts should respond differently to errors arising from inevitable human errors in the practice of law from those arising from

14

the reckless use of GenAI. *Johnson*, 792 F. Supp. 3d at 1263. That court correctly observed that "not every error in a motion is recklessness or more. To err is human, and minor typographical errors, even in citations, occasionally occur despite attorneys' best efforts." *Id*. On the other hand, the reckless use of GenAI resulting in wholly "bogus citations" is worthy of sanctions. *Id.* at 1263. In the view of the *Johnson* court, the attorney "[h]aving been so extensively alerted of the risk that AI will make things up, and having blown through all of his firm's internal controls designed to protect court filings from counterfeit citations, [his] repeated decisions to parrot citations generated by AI without verifying even one of them reflect complete and utter disregard for his professional duty of candor. This is recklessness in the extreme, and it is tantamount to bad faith." *Id.* at 1262.

*Johnson* is undoubtedly correct in recognizing a bright line between forgivable human error, on the one hand, and abdication of responsibility to GenAI, on the other. Again, the touchstone for sanctions in this context is whether "conduct sunk so far beneath a reasonable standard of competence, much deeper than mere negligence, that it became essentially indistinguishable from bad faith." *Cordoba*, 419 F.3d at 1178 (citation omitted). Basic human mistakes in the practice of law—even those arising from negligence—are not subject to *sua sponte* Rule 11 sanctions, therefore. *Id.*

Here there is no indication the misattributions at issue arose from anything

beyond unfortunate, but forgivable, human negligence by defense counsel.[7] The misattribution of a correct principle of law by a well-supervised young attorney simply does not speak to conduct "much deeper" than negligence. Likewise, Counsel Cabrera's apparent failure to confirm the attribution should not be viewed as more than negligent. Rule 11 looks at whether *legal contentions* have support,[8] and the *contentions* of the brief do have such support. She should not face sanctions, therefore, for the mere failure to cross-check the attribution of every citation in briefing on a well-tread area of law. The same is true—but to an even greater degree—for Counsel Moulard, who was retained to advise on local custom and practice but not to perform substantive review of legal positions in briefing. Troutman Decl. at ¶12; Moulard Decl. at ¶¶ 8, 16. Finally, the conduct of Counsel Troutman—the ultimate approver of the brief—cannot be said to be negligent, much less reckless, as he reasonably relied upon an experienced "lieutenant-level" attorney

---

[7] Although the OSC is directed at the Defendant, the Defendant did not have a hand in drafting or submitting the briefs and did not sign either of them. Defendant should not, therefore, face sanctions. Troutman Decl. at ¶ 19.

[8] *See* Fed. R. Civ. P. 11 ("By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…").

to properly attribute cites in the brief while he reviewed for style, substance and quality.[9]

This case is not like those involving the rash of GenAI-induced errors and hallucinations littering the federal courts. At least 23 orders have now been issued sanctioning lawyers for their careless use of AI.[10] These decisions are undoubtedly

---

[9] Still, responsibility for the mistake must fall somewhere and Counsel Troutman has requested that if anyone should be sanctioned for the misattribution, it should be him as the ultimate approver of the brief for the Defense. Troutman Decl. at ¶18.

[10] *See ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1357 (S.D. Fla. 2025); *Johnson v. Dunn*, 792 F. Supp. 3d 1241 (N.D. Ala. 2025); *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351, at *7 (S.D. Fla. May 20, 2025); *Dubinin v. Papazian*, No. 25-CV-23877-RAR, 2025 WL 3248187, at *2 (S.D. Fla. Nov. 21, 2025); *United States v. McGee*, No. 1:24-CR-112-TFM, 2025 WL 2888065, at *9 (S.D. Ala. Oct. 10, 2025); *Med. Buyers Grp., LLC v. Pence*, No. 3:25-CV-00105-TES, 2026 WL 149949, at *4 (M.D. Ga. Jan. 20, 2026); *Ringer v. Bank of Am., N.A.*, No. 1:25-CV-3959-SEG-JSA, 2025 WL 3765431, at *5 (N.D. Ga. Dec. 30, 2025); *Jackson v. Auto-Owners Ins. Co.*, No. 7:24-CV-136–WLS, 2025 WL 1932274, at *5 (M.D. Ga. July 14, 2025); *Ezzy Credit, LLC v. Prescription Techs., Inc.*, No. 8:24-CV-2436-SDM-AAS, 2025 WL 3067426, at *4 (M.D. Fla. July 8, 2025); *Moore v. City of Del City*, No. 25-6002, 2025 WL 3471341, at *3 (10th Cir. Dec. 3, 2025); *Ferris v. Amazon.com Services, LLC*, 778 F. Supp. 3d 879, 881-82 (N.D. Miss. 2025); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 351 (E.D.N.Y. 2025); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 499 (D. Wyo. 2025); *United States v. Hayes*, No. 24-CR-0280, 763 F.Supp.3d 1054, 1072-73 (E.D. Cal. Jan. 17, 2025); *Gauthier v. Goodyear Tire & Rubber Co.*, No. 23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024); *Mid Central Operating Engineers Health & Welfare Fund v. Hoosiervac LLC*, No. 24-CV-00326, 2025 WL 574234, at *2-3 (S.D. Ind. Feb. 21, 2025); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023); *In re Martin*, 670 B.R. 636 (Bankr. N.D. Ill. 2025); *Lexos Media IP, LLC v. Overstock.com, Inc.*, No. 22-2324-JAR, 2026 WL 265581, at *15 (D. Kan. Feb. 2, 2026); *In re Richburg*, 671 B.R. 918, 925 (Bankr. D.S.C. 2025); *KUSMIN L. AMARSINGH, Plaintiff - Appellant, v. FRONTIER AIRLINES, INC., Defendant - Appellee.*, No. 24-1391, 2026 WL 352016, at *6 (10th

correct—just as a drunk driver deserves heightened scrutiny when he climbs behind the wheel, so too does a lawyer that thoughtlessly endangers the court's quest for justice by deploying GenAI deserve unflinching severity from the courts in issuing sanctions to deter such conduct.

But this case is miles away from those. Nothing about the mistake at issue here indicates recklessness or gross negligence falling below the applicable standard of care. Issuing a sanction for the mistake here would not deter negligence[11]— mistakes *will* happen over the course of filing thousands of briefs across hundreds of cases over time no matter how cautious a law firm behaves—it would only send the message that no one is safe and disincentivize caution and supervision. It would signal human mistakes are not tolerated and, ironically, incentivize the use of AI tools that are not subject to such mistakes (just myriad different, and worse, mistakes).

Further, this case is also unlike the recent case *Ringer v. Bank of Am., N.A.*, No. 1:25-CV-3959-SEG-JSA, 2025 WL 3765431, at *5 (N.D. Ga. Dec. 30, 2025). There the head of McGuire Woods issued an apology for stunning and

---

Cir. Feb. 9, 2026); *Dehghani v. Castro*, 782 F. Supp. 3d 1051, 1062 (D.N.M. 2025); *Fletcher v. Experian Info. Sols., Inc.*, No. 25-20086, 2026 WL 456842, at *6 (5th Cir. Feb. 18, 2026).

[11] The purpose of Rule 11 sanctions is to deter, rather than to compensate. *See Ringer*, 2025 WL 3765431, at *3 ("the Court must…assess sanctions…to deter future violations by the specific counsel or law firm responsible in that case or other lawyers, firms, and unrepresented parties more generally.").

repeated oversights by the firm in supervising so-called "staff attorneys" who operated with limited oversight. Defendant's Counsel's Response to Order to Show Cause at 4, *Ringer v. Bank of Am., N.A.*, No. 1:25-CV-3959-SEG-JSA (N.D. Ga. Nov. 25, 2025). At issue in that suit was an attorney who submitted numerous erroneous briefs in multiple cases, each containing *multiple* made up or erroneous citations. "This was not a case of a typographical-type error or a couple of small inaccuracies. The Court identified numerous problems in several case citations, and at least one lengthy supposed block quotation from a statute that was almost entirely paraphrased." *Ringer*, 2025 WL 3765431 at *3. Indeed, at least ten (10) cases were incorrectly cited by the associate, Order, ECF No. 10, at 3-9, *Ringer v. Bank of Am., N.A.*, No. 1:25-CV-3959-SEG-JSA (N.D. Ga. Nov. 25, 2025), a factor the Court considered to be "aggravating." *Ringer*, 2025 WL 3765431 at *3. The scale of the oversights and errors in that case were significant enough to result in meaningful sanctions, specifically (1) the Magistrate Judge's findings shall be accessible on the Court's public docket and submitted to the Case Reporter; (2) a fine of $1,500 to be paid by the associate; and (3) should the associate stay on the case, supervisory counsel must maintain an appearance and co-sign all papers in this case. Order at 2, *Ringer v. Bank of Am., N.A.*, No. 1:25-CV-3959-SEG-JSA (N.D. Ga. Dec. 30, 2025).

By contrast here we have a single confined (albeit repeated) error apparently caused by a carefully supervised junior attorney on an uncontroversial issue of law

gleaned by an appellate court from the very Supreme Court decision the quotation was attributed to. Yes, it was a mistake to misattribute the quote, but it was not the sort of mistake even a cautious law firm was likely to catch in the process of review. The numerous, glaring errors in *Ringer* were a horse of a different color—they were the byproduct of a failed supervisory review process—and the Court in *Ringer* properly issued sanctions to deter reckless citation and supervisory practices at McGuireWoods and elsewhere.  Those concerns are simply not present here.

At bottom, the misattribution at issue here arose from mere negligence at worst and not the sort of "objective bad faith" meriting sanctions in this context. *In re Engle Cases*, 283 F. Supp. 3d at 1214.

## I.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should decline to impose sanctions on Defendant Better Debt Solutions, LLC, as well as its current and former counsel.

Dated: February 23, 2026

TROUTMAN AMIN, LLP

<u>/s/ Eric J. Troutman</u>
Eric J. Troutman
400 Spectrum Center, Ste. 1550
Irvine, CA 92618
Telephone: (949) 761-5021
troutman@troutmanamin.com

*Counsel for Defendant Better Debt
Solutions, LLC*

## <u>CERTIFICATION</u>

I hereby certify that on February 23, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Eric J. Troutman*
Eric J. Troutman

## **CERTIFICATE OF COMPLIANCE**

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

*/s/ Eric J. Troutman*
Eric J. Troutman