**UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **LATRICE AUSTIN**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**BETTER DEBT SOLUTIONS, LLC,**<br><br>Defendant. | Case No. 1:25-cv-01103-SDG<br><br>District Judge Steven D. Grimberg |

**<u>DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO INDIVIDUAL ARBITRATION</u>**

Defendant Better Debt Solutions, LLC ("BDS") hereby moves to compel Plaintiff Latrice Austin's ("Plaintiff") claims to individual arbitration and to dismiss or stay this action (the "Motion") for the reasons set forth in the accompanying Memorandum of Law.

## MEMORANDUM OF LAW

### I. INTRODUCTION

Plaintiff's claims do not belong before this Court – they belong in arbitration. When Plaintiff voluntarily entered her information and affirmatively accepted the terms and conditions disclosed on https://upfinances.com/apply (the "Website"), Plaintiff entered into a valid and enforceable agreement to arbitrate on an individual basis "any and all disputes or claims" she has with BDS, "including all claims under 47 U.S.C. § 227 et. seq." Terms of Use ("Exhibit B"), at 12. Accordingly, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et. seq.*, requires this case to be moved to arbitration and dismissed or stayed.

Plaintiff brings claims under the Telephone Consumer Protection Act's ("TCPA") prerecorded call provision, found at 47 U.S.C. § 227(b). However, this Court need not reach the merits, as two threshold questions control: (1) whether a valid arbitration agreement exists, and (2) whether arbitrability is delegated to the arbitrator.

First, Plaintiff entered into a valid arbitration agreement. On November 26, 2024, Plaintiff visited the Website and entered her phone number, checked the box indicating assent to its accompanying disclosure language, and clicked "Submit." The disclosure stated, "I acknowledge and agree to the Privacy Policy and Terms

of Use, which includes binding arbitration." *See* Verified Consent ("Exhibit A")[1]; Decl. of Edgar Ovalle ("Exhibit C"), at ¶6; Decl. of Chase Webb ("Exhibit D"), at ¶9. By checking the box and clicking "Submit," Plaintiff accepted the Terms of Use, including the arbitration provision (the "Arbitration Agreement"). *Id.*

Second, the Arbitration Agreement submits arbitrability to the arbitrator. Its language provides that it is governed by the rules of the American Arbitration Association ("AAA"), which submits arbitrability to the arbitrator. It also expressly states that "[t]he arbitrator will decide whether the Dispute can be arbitrated."

Because both issues must be answered in the affirmative, this Court must compel arbitration.

## II. FACTUAL BACKGROUND

### A. Plaintiff Manifested Assent to the Terms by Completing an Online Form on UpFinances.Com/Apply and Accepting the Terms of Use by Clicking the "Submit" Button.

On November 26, 2024, Plaintiff visited https://upfinances.com/apply (the "Website"). While on the Website, Plaintiff entered her personal identifying information including her name "Leatrice Austin," her phone number ending in 3525 and accepted the following disclosure:

> By checking this box and clicking SUBMIT, I express my understanding and consent electronically via E-sign that I acknowledge and agree to the Privacy Policy and Terms of Use, which includes

[1] The verified consent form and video playback can be accessed here: https://cert.verifiedconsent.com/?CertID=[redacted]

> binding arbitration. I consent to the electronic collection and storage of my application information necessary to evaluate my loan application. I grant express written consent for Better Debt Solutions and Lendvia to contact me by calls and/or text messages at the number provided, regarding my application status and scheduling, using any telephone dialing system, prerecorded/artificial voice messages, and/or automatic dialing devices. I understand that text messages may incur data and message rates and frequency varies (text HELP for help; text STOP to cancel). Even if my phone number is currently listed on any state, federal, or corporate Do-Not-Call list, this consent is provided. I understand I may revoke this consent at any time and am not required to consent as a condition of purchase any property, goods, or services. Consent for SMS and calls will not be shared with third parties for their marketing purposes.

Exhibit A; Exhibit C, at ¶5; Exhibit D, at ¶8. This disclosure clearly states that by checking the box and clicking the "Submit" button beneath the disclosure, the user agrees to the Website's Terms of Use, "which include[] binding arbitration." *See* Exhibit A; Exhibit C, at ¶6; Exhibit D, at ¶9. These Terms of Use are hyperlinked in bright blue underlined text within the disclosure and again underneath the "Submit" button beneath the disclosure. Exhibit A; Exhibit C, at ¶6; Exhibit D, at ¶9.


By checking this box and clicking SUBMIT, I express my understanding and consent electronically via E-sign that I acknowledge and agree to the Privacy Policy and Terms of Use, which includes binding arbitration. I consent to the electronic collection and storage of my application information necessary to evaluate my loan application. I grant express written consent for Better Debt Solutions and Lendvia to contact me by calls and/or text messages at the number provided, regarding my application status and scheduling, using any telephone dialing system, prerecorded/artificial voice messages, and/or automatic dialing devices. I understand that text messages may incur data and message rates and frequency varies (text HELP for help; text STOP to cancel). Even if my phone number is currently listed on any state, federal, or corporate Do-Not-Call list, this consent is provided. I understand I may revoke this consent at any time and am not required to consent as a condition of purchasing any property, goods, or services. Consent for SMS and calls will not be shared with third parties for their marketing purposes.

← Previous

Submit ✓

y Credit Authorization | Disclaimer | Responsible Lending | Marketing Practices | Rates & Fees | Terms of Use | Unsub

By Submitting your information, you agree to our Terms & Conditions , Privacy Policy , Credit Authorization and you consent to receive calls, texts and pre-recorded messages from us and third party marketers we contract with.**

### B. Plaintiff Agreed to Resolve *Any And All* Claims Against BDS Through Individual Arbitration.

On the very first page, the Terms of Use proudly display the following language in bold, all-capital letters:

> These Terms contain a binding Arbitration Agreement and a class action waiver. These provisions require you to arbitrate any disputes or claims you have with us on an individual basis. You will not be able to participate in a class action or multi-arbitration. You have the right to opt out of this requirement.

Exhibit B, at 1; Exhibit D, at ¶13.

As promised on the first page, the Terms of Use contain the following Arbitration Agreement:

> You and we each agree to resolve any and all disputes or claims that have arisen or may arise between you and us (including any affiliates, officers, directors, employees, and agents), whether or not such dispute or claim involves a third party, relating in any way to any aspect of our relationship or any contact between us, direct or indirect, or arising out of the previous versions of these Terms, your use of or access to our Site or services, or any products or services sold, offered, or purchased through our Site or services including all claims under 47 U.S.C. § 227 et. seq. and related state statutes ("Dispute") through negotiations and in good faith. If we don't resolve the Dispute within 60 days you and we each agree to resolve it exclusively through final and binding arbitration.
>
> You and we agree as follows:
>
> (a) To submit the Dispute to a single arbitrator under the then-current Commercial Arbitration Rules of the American Arbitration Association (AAA), including when applicable the Optional rules for Emergency Measures of Protection and the Consumer Arbitration Rules, or, by separate mutual agreement, at another arbitration institution. The AAA's rules, information regarding initiating a claim, and a description of the arbitration process are available at www.adr.org. The location of the arbitration and the allocation of fees and costs for such arbitration shall be determined in accordance with the AAA rules. As an alternative, you or we may bring a claim in your local "small claims" court, if permitted by that small claims court's rules.
>
> (b) The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate, and the arbitrability of the Dispute. The arbitrator will decide whether the Dispute can be arbitrated.

Exhibit B, at 12-13. Accordingly, Plaintiff agreed to submit her claims against BDS to arbitration, including the threshold issue of arbitrability.

Additionally, the Terms of Use contain a class action waiver:

> (c) You and we agree that each of us may bring a Dispute against the other only on our own behalf, and not on behalf of a government official or other person or entity, or a class of persons or entities. You and we agree, if we are a party to a proceeding, not to participate in a class action, a class-wide arbitration, a claim brought in a private attorney general or representative capacity, or a consolidated claim involving another person's use of the Site or our services. You and we agree not to combine a claim that is subject to arbitration under these Terms with a claim that is not eligible for arbitration under these Terms. You and we agree to waive the right to a trial by jury for all disputes.

Exhibit B, at 13. By submitting her personal information and affirmatively accepting the disclosure on the Website, Plaintiff expressly agreed to the Terms and Conditions, including the binding Arbitration Agreement and the unambiguous waiver of any right to participate in a class action and to a jury trial.

**C. Plaintiff's Claims Arose Because She Provided Her Consent On The Website.**

In her Complaint, Plaintiff claims to have received unsolicited prerecorded calls and voicemails to her cellular phone number in violation of the TCPA. Compl. ¶¶ 18-74, ECF No. 1. Without admitting any liability, Plaintiff entered her number on the Website and consented to be contacted at that number by BDS regarding her "application status and scheduling, using any telephone dialing system, prerecorded/artificial voice messages, and/or automatic dialing devices." Exhibit A; Exhibit C, at ¶5; Exhibit D, at ¶17. Therefore, Plaintiff's claims about the calls she allegedly received arose from her "use of or access to the Website" and fall squarely within the scope of the Arbitration Agreement.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") codifies a strong federal policy in favor of enforcing arbitration agreements, including agreements to arbitrate statutory claims. *See* 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505-06 (2018) ("The [FAA], this Court has said, establishes 'a liberal federal policy favoring arbitration agreements.'") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991) (holding that the FAA demonstrates a federal policy favoring arbitration and that it was intended to reverse longstanding judicial hostility to arbitration agreements); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'") (quoting *Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)) (alteration in original).

"[I]n Congress's judgment arbitration ha[s] more to offer than courts recognized—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys. Corp.*, 584 U.S. at 505; *see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (noting that arbitration allows parties to resolve their claims for "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized

disputes."). Thus, "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)) (alteration in original).

The FAA permits a party to move to compel arbitration when an opposing party refuses to arbitrate as required by a valid arbitration agreement. *Id.* at 25; 9 U.S.C. §§ 3-4. "[T]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2-4, and *Paladino v. Avnet Comput. Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998)). In construing the latter prong, any doubts regarding the scope of arbitrable issues "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25. If these two requirements are found, the court must compel arbitration without regard to the merits of the issue. *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1086) ("[I]n deciding whether the parties have agreed to submit a particular

grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.); *see also Moses H. Cone Mem. Hosp.*, 460 U.S. at 22 (noting "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.").

## IV. ARGUMENT

### A. Plaintiff Must Be Compelled to Arbitrate Her Claims.

Plaintiff's claims against BDS are governed by the FAA. *See* 9 U.S.C. § 2. Under this statute, an agreement to arbitrate, like the Terms of Use, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* As the Eleventh Circuit has explained, a district court on a motion to compel must consider (1) whether an agreement to arbitrate was formed, and (2) whether the agreement encompasses the dispute at issue. *Lambert*, 544 F.3d at 1195 (citing 9 U.S.C. §§ 2-4 and *Paladino*, 134 F.3d at 1061); *see also Taylor v. Experian Info. Sols., Inc.*, No. 1:24-cv-02156, 2024 WL 5265371, at *2 (N.D. Ga. Dec. 31, 2024) (putting forth this inquiry).

The Supreme Court has explained that the FAA "leaves no place for the exercise of discretion by a district court, [] instead mandat[ing] that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4). Accordingly, "[j]ust as the arbitrability of the merits

of a dispute depends on whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.'" *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)) (alteration in original). And where the parties clearly and unmistakably delegate this power to the arbitrator, "a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (quoting *First Options*, 514 U.S. at 944).

Plaintiff must be compelled to arbitrate her claims. Without question, a valid arbitration exists that submits the question of arbitrability to the arbitrator. Because the language delegating this power is clear and unmistakable, this Court's inquiry should end there. However, if the Court addresses the second prong, Plaintiff's claims fall within the scope of the arbitration agreement in the Terms of Use. Accordingly, Plaintiff must be compelled to arbitrate her claims against BDS on an individual basis and this case must either be dismissed or stayed.

**1. Plaintiff Entered into an Enforceable Arbitration Agreement.**

In determining whether a valid arbitration agreement exists, "courts generally … should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. The agreement at issue is expressly governed and construed in accordance with the substantive laws of the State of

Nevada, without regard to its conflict of law principles. Exhibit B, at 11, 14; Exhibit C, at ¶8 Under Nevada law, like most jurisdictions, "basic contract principles require[ing], for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (citing *Keddie v. Beneficial Ins., Inc.*, 580 P.2d 955, 956 (Nev. 1978)).

"Courts routinely find clickwrap agreements to be enforceable." *Oberstein v. Live Nation Entmt., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023); *see also Keebaugh v. Warner Bros. Entmt. Inc.*, 100 F.4th 1005, 1014, 1021 (9th Cir. 2024) (quoting same and finding that the online agreement is "conspicuous and puts the reasonable user on notice that they are agreeing to be bound by the Terms of Service."); *Evans v. PayPal, Inc.*, No. 22-15979, 2023 WL 6058490, at *1 (9th Cir. Sept. 18, 2023) (finding that PayPal sufficiently demonstrated that plaintiffs entered into agreement where "PayPal produced a PayPal employee's declaration describing the process by which each plaintiff signed up for his or her PayPal account (including a screenshot of a checkbox assenting to the User Agreement that must be selected, as well as a button stating 'agree and create account.'"). The Ninth Circuit has even stated that "clickwrap represents 'clearest manifestations of assent' and is 'certainly the easiest method of ensuring the terms are agreed to[.]" *Oberstein*, 60 F.4th at 514 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th, 849 856-58 (9th Cir. 2022)).

Unless the website operator can establish that the consumer had actual

knowledge of the agreement, inquiry notice will establish an enforceable contract where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. Under the first prong, notice is conspicuous where it is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* Under the second prong, unambiguous assent requires the user to be "explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* at 857.

The form Plaintiff filled out on https://upfinances.com/apply is undoubtedly a clickwrap agreement. A clickwrap agreement is one in which "a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Oberstein*, 60 F.4th at 513 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). In accordance with this definition, the Website required Plaintiff to signify her affirmative acceptance of the consent language containing the Terms of Use by checking a box and clicking the "Submit" button to proceed.

Under the first prong, the Website offered Plaintiff reasonably conspicuous notice of the relevant terms. Because the Website places the consent language above

the "Submit" button, users are forced to see it before submitting the form. The text of the consent language appears in black on a white background, except for the hyperlinked Terms of Use and Privacy Policy, which are underlined and highlighted in bright blue lettering. The formatting is clear and legible, and the font size is consistent with the content on the webpage. Further, the consent language warns by clicking submit, the user is agreeing to the Terms of Use, "includ[ing] binding arbitration." And should the user choose to click on the Terms of Use, she would be confronted with a document, the first page of which contains the following in all capital letters and bold font:

> These terms contain a binding arbitration agreement and a class action waiver. These provisions require you to arbitrate any disputes or claims you have with us on an individual basis. You will not be able to participate in a class action or multi-party arbitration. You have the right to opt out of this requirement.

*See* Exhibit A; Exhibit C, at ¶6; Exhibit D, at ¶9. As such, users are given clear and conspicuous notice.

Under the second prong, users are also advised that clicking constitutes assent to the Terms of Use. The consent language states that "[b]y checking this box and clicking SUBMIT, I express my understanding and consent electronically via E-sign that I acknowledge and agree to the Privacy Policy and Terms of Use, which includes binding arbitration." The second prong is therefore satisfied.

Thus, Plaintiff was provided with conspicuous notice that by checking the box

and clicking submit, she unambiguously manifested her agreement with the Website's Terms of Use. As such, Plaintiff agreed to the Arbitration Agreement therein.

### 2. The Arbitration Agreement Contains a Valid Delegation Clause.

"A court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator[.]" *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015). The Arbitration Agreement unambiguously provides that disputes are to be submitted "to a single arbitrator under the then-current Commercial Arbitration Rules of the American Arbitration Association (AAA)" and that "[t]he arbitrator will decide whether the Dispute can be arbitrated." Exhibit B, at 13.

However, even ignoring this language, the AAA Rules submit the arbitrability question to the arbitrator. Specifically, they state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R7(a). By itself, "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

The combination of the Arbitration Agreement's express language and its incorporation of the AAA rules make it undeniable that the arbitrability question is

delegated to the arbitrator. As such, this Court's analysis should end here.

### 3. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

Notwithstanding the delegation clause, the Arbitration Agreement undisputably encompasses Plaintiff's claims. The Agreement provides that "any and all disputes or claims that have arisen or may arise between you and us (including any affiliates, officers, directors, employees, and agents) … including all claims under 47 U.S.C. § 227 et. seq. [the TCPA] and related state statutes" are to be resolved "exclusively through final and binding arbitration." Exhibit B, at 12. And the Terms of Use specifically state that "the terms 'we', 'our' and 'use' refer to … Better Debt Solutions LLC[.]" *Id.*, at 1. Needless to say, Plaintiff's claims fall within "any and all disputes or claims[,]" and invoke 47 U.S.C. § 227(b).

In evaluating the scope of arbitration agreements, federal policy dictates that courts should strongly favor compelling arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). An arbitration clause is broad if it covers "all disputes arising out of a contract[,]" and narrow if it covers only specific types of disputes. Under a broad provision like the one at issue, a presumption of arbitrability applies and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal citation omitted).

Because Plaintiff's TCPA claims are encompassed by the Arbitration

Agreement she accepted, this Court should dismiss or stay the case and compel arbitration.

### B. Plaintiff Must Arbitrate Her Claims Individually.

"Parties to an arbitration agreement may specify the issues they choose to arbitrate, may agree on a set of procedural rules to use during the arbitration, and may limit with whom they choose to arbitrate their disputes." *Villamar v. Clean Harbors Env't Servs. Inc.*, No. 222CV03966MEMFJEMX, 2022 WL 4465549, at *3 (C.D. Cal. Sept. 23, 2022) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). This includes class action waivers. Indeed, the Supreme Court has explained that "under the FAA, class or collective action waivers in arbitration agreements are enforceable even if state law would find those provisions unconscionable or against state public policy." *Reno v. Western Cab Co.*, No. 2:18-cv-00840, 2020 WL 5606897, at *4 (D. Nev. Sept. 18, 2020) (discussing the effect of *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-44 (2011)); *see also Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *2 (9th Cir. Aug. 19, 2021) (finding class action waiver to be enforceable under Nevada law).

Although Plaintiff seeks to pursue a class action, she agreed to the following class action waiver:

> You and we agree that each of us may bring a Dispute against the other only on our own behalf, and not on behalf of a government official or other person or entity, or a class of persons or entities. You and we

> agree, if we are a party to a proceeding not to participate in a class action, a class-wide arbitration, a claim brought in a private attorney general or representative capacity, or a consolidated claim involving another person's use of the Site or our services.

Exhibit B, at 13. This language is unequivocal and plainly enforceable under the FAA. As such, this Court should either dismiss this matter or stay the case. *See Reno*, 2020 WL 5606897, at *6 (compelling arbitration and dismissing plaintiffs' claims).

## V. CONCLUSION

For the foregoing reasons, BDS respectfully requests that this Court compel Plaintiff to arbitrate her claims individually.

Dated: June 23, 2026


TROUTMAN AMIN, LLP

*/s/ Steven L. Rozenfeld*
Steven L. Rozenfeld
400 Spectrum Center, Ste. 1450
Irvine, CA 92618
P: (347) 634-3527
steven@troutmanamin.com

*Counsel for Defendant Better Debt Solutions, LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing was prepared using Times New Roman font, 14-point type, which is one of the font and print selections approved by the Court in L.R. 5.1(c). This 23rd day of June, 2026.

*/s/ Steven L. Rozenfeld*
Steven L. Rozenfeld

## CERITIFICATION

I hereby certify that on June 23, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Steven L. Rozenfeld*
Steven L. Rozenfeld